In re Najla **SHIHADEH, Debtor.**

The **MAY COMPANY, aka O'Neils, Plaintiff,**

v.

Najla **SHIHADEH, Defendant.**

**Bankruptcy No. B89–1832. Adv. No. B89–0328.**

United States Bankruptcy Court, N.D. Ohio, E.D.

March 6, 1990.

Lee R. Kravitz, Euclid, Ohio, for plaintiff.

Robert J. Berk, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter is before the Court upon the motion of Plaintiff, The May Company (May), for summary judgment following the filing of a complaint to determine the dischargeability of a credit card debt owed by Najla Shihadeh (Debtor) to May. Upon an examination of the parties' respective briefs and supporting documentation, the following findings of fact and conclusions of law are hereby made:

### I.

The Debtor sought relief in this Court by filing her voluntary Chapter 7 petition on May 10, 1989. As alleged in its complaint to determine dischargeability of a debt, May, an unsecured creditor, extended credit to the Debtor through her use of a credit card. The credit extensions totalled $1,768.75 plus interest at a rate of 21.5%. Alleging nondischargeability under provisions of 11 U.S.C. § 523(a)(2), May avers that the credit extensions occurred as a result of false representations made by the Debtor at a time when she was insolvent and had no ability to repay the indebtedness.

During the course of pretrial discovery, May obtained deposition testimony from the Debtor through an interpreter.[1] In relevant part, the deposition testimony of the Debtor revealed that she is widowed and has lived with one of her five sons and his family in North Olmsted, Ohio for three years and previously had resided in New York. At the time of her deposition she was unemployed and had not worked "officially" in the past two years. To some unspecified extent, she had helped her sons by "cleaning and arranging things" in a now defunct landscaping business which closed one and a half years prior to her deposition. (Depo., p. 7). Her sole source of regular income was monthly Social Security payments in an amount of $456.00 which she applied for on August 25, 1988 when she was 60 years of age. (Depo. pp. 8–9). In addition to the Social Security income, she receives $25.00 per week from each of her five sons. (Depo. p. 9).

The Debtor's deposition testimony further revealed that she opened the May account approximately two years ago in 1988 and recalls making purchases at May but was uncertain as to the dates of purchases made. (Depo. at p. 10). She positively identified her signature on each purchase receipt exhibited to her at her deposition (Depo. at pp. 10–11). She acknowledged she received monthly statements from May Company but testified that her son and daughter-in-law settled those statements for her as she is unable to read or write (Depo. at p. 11). None of the purchases made by the Debtor was ever disputed by

---

1. Deposition of Najla J. Shihadeh, taken on January 25, 1990.

her or by anyone. (Depo. at p. 12); Affidavit of Judy Zak, dated 2–6–90).

Between the dates of September 18 and 27, 1988, the Debtor charged a total of $864.00 to her May credit account (Depo. at p. 14). During that period, she bought presents for all the family including the grandchildren. May's complaint alleges that the Debtor made false representations to incur credit extensions totalling $1,768.75. Between August 2, 1988 and October 23, 1988, her charges exceeded $1,500.00. At the time she made the purchases she was unemployed, with Social Security payments and family contributions being the sole source of her income. (Depo. at p. 16).

She could not recall her account balance prior to August of 1988, but deposition Exhibit No. 8 indicated a pre-August, 1988 balance of $257.48. When further queried on this matter, the Debtor testified that "she used to sign to buy and the bills go to her five sons." (Depo. at p. 17). She expected her sons to pay for the charges made. (*Id.*) Two payments were made on her account since August of 1988. One payment of $45.00 was credited on August 25, 1988 and another payment of $40.00 was credited on September 22, 1988 (Depo. at p. 18). No payments were made on her May account since September, 1988. Between August, 1988 and October 2, 1988, the Debtor charged a total of $1,529.15 on the two accounts she opened with May. (See, Affidavit of Judy Zak, *supra*).

Although the Debtor relied on her sons to pay her bills with May, she further testified that their landscape business had failed one year and eight months before her deposition and, as a result, they were unable to do so. (Depo. at pp. 18–19). She relied on the son she was living with to pay her May account (Depo. at p. 18) but testified that he was unemployed when the subject charges were made. No other sons were living with her during this period. (Depo. at p. 21.) She, personally, never made any attempt to make payments on her accounts at May. (Depo. at 22).

■ A debtor who incurs prepetition debt, who made no personal efforts to pay the debt, and relied wholly on the efforts of others to pay the debt cannot fairly expect to obtain a discharge of such debt in bankruptcy.

Her deposition testimony indicates her regular income (Social Security) did not commence until August of 1988. This goes against any reasonable reliance by May Company as to her credit worthiness, particularly since she was widowed, had only recent community ties, was unemployed, and had no stable source of income other than contributions from family members. Although the record does not reflect when she first received her credit card from May Company, the record is clear to indicate she did not commence receipt of Social Security until August of 1988. One sales receipt exhibited on Ex. 3–A is dated as early as August 2, 1988. *See In re Ward*, 857 F.2d 1082 (6th Cir.1988).

## II.

The dischargeability of a debt under § 523(a)(2) of the Bankruptcy Code provides:

§ 523. Exceptions to discharge.

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) Use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive ... [11 U.S.C. 523(a)(2)(A) and (B)]

In view of the § 523(a)(2) exception to discharge, May contends that the Debtor

incurred the subject debt through false representations at a time when she was insolvent and had no ability to repay the debt, rendering the debt nondischargeable. In her brief in opposition to a grant of summary judgment, the Debtor argues that although she made the various charges in 1988, she had the ability to pay for the debt and intended to do so. Based upon the aforementioned review of the Debtor's deposition testimony, the Debtor's argument is only partially meritorious.

■ It is quite evident that during the period of August, 1988 and October, 1988 when the subject charges were incurred, the Debtor experienced a diminished ability to repay her debt to May Company due to the failure of her sons' landscaping business. It is also rather apparent, based on the Debtor's testimony, that she made no efforts to repay her debt to May. She undisputedly made the charges and relied on the efforts of others to pay the bills for her. She made the charges at a time when she was unemployed, received a modest income from Social Security, and when the reported contributions from her sons ceased to be forthcoming. She specifically testified that they were unable to pay her bills due to the failure of their landscape business. Her attitude towards repayment on her May Company debt reflected one of reckless indifference. *In re Deloian*, 60 B.R. 161, 14 B.C.D. 539 (Bankr.N.D.Ill. 1986). Her repeated use of her credit card during the subject period in view of her inability to repay was intentional.

■ The requisite element of "reliance" has not been sufficiently demonstrated in the movant's supporting documentation, and that material issue is contested. This is particularly significant in view of the fact that the Debtor's credit card privileges were not revoked and the Debtor's deposition testimony that her Social Security income did not commence until August of 1988. (Depo. at pp. 8–9). Moreover, the movant's belief that "reliance" is adequately evidenced by the fact that purchases were made is not persuasive. The requisite elements for nondischargeability under § 523(a)(2)(B) are in the conjunctive,

and each is to be proved by clear and convincing evidence. Furthermore, a grant of summary judgment should issue only "if the pleadings, depositions ... together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. Herein, for the above-stated reason, that standard has not been met.

Accordingly, May Company's motion for summary judgment is hereby denied.

IT IS SO ORDERED.